The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr. and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence, or to amend the Opinion and Award.
* * * * * * * * * * * * *
Prior to the initial hearing before Deputy Commissioner Shuping the parties entered into a Pre-Trial Agreement, which is hereby incorporated by reference as if fully set out herein, in which they agreed to a number of jurisdictional and other factual stipulations. Subsequent to the hearing before Deputy Commissioner Shuping the parties obtained the deposition of Dr. John R. Leonard as well as agreed to stipulate the medical records of plaintiff's family physician, Dr. Richard Rawl.
* * * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a right handed 55 year-old female with a ninth grade education.
2. Since October 8, 1980 she has worked in the laundry of defendant-employer's nursing home washing, drying and folding clothes of the premises patients requiring a lot of lifting, pulling and straining with her dominant right arm in the course of loading and unloading clothes as well as using the same arm to slam close the doors of the two commercial washing machines there.
3. At a time certain on May 20, 1993 in the process of slamming the door of one of the premises two washing machines that was harder to close after its leaky seal had been replaced with another one plaintiff contends that she sustained either an interruption of her normal work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences and/or a specific traumatic incident resulting in the disabling and otherwise compensable cervical disc herniation giving rise hereto.
4. Plaintiff's testimony, and other evidence, which if believed would tend to establish that in the process of slamming the door on one of the premises commercial washing machines on May 20, 1993 she sustained a compensable back (neck) injury, either as a result of a specific traumatic incident and/or an interruption of her normal work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences is not accepted as credible based not only on her demeanor at hearing, but the following facts:
 a. Plaintiff did not notify defendant-employer that she had injured her neck on May 20, 1993 or thereafter until August 2, 1993 when the stipulated accident reports were prepared and then did not indicate that her injury occurred at a particular time on May 20, 1993 or any other date; but rather, attributed her ruptured cervical disc to continually using the same right arm to slam the washer door for a long time. The first time defendant-employer had heard of a specific traumatic incident when plaintiff is alleged to have injured her neck slamming the washing machine door on May 20, 1993 was when she testified at hearing.
 b. When plaintiff initially sought treatment for her resulting neck problems on May 25, 1993 from her family physician, Dr. Rawl, she did not give a history of injuring her neck slamming a washing machine door at work much less a history of having injured herself at work or elsewhere, which is consistent with the recorded statement taken of her by a representative of defendant-carrier regarding the circumstances of her alleged neck injury where she denied sustaining a specific neck injury, at work or elsewhere.
 c. When plaintiff was seen by Dr. Leonard for neurosurgical evaluation upon Dr. Rawl's referral she did not give a history of having sustained a specific neck injury on May 20, 1993 or any other time, much less one resulting from her slamming the door on a commercial washing machine at work; but rather, gave one of working in a laundry requiring her to do a lot of pulling of clothes with her arm and while working and doing a lot of heavy pulling and straining in May she began to have increased neck discomfort and radiating pain into her right arm, which is inconsistent with the specific injury she allegedly sustained slamming the washing machine door on May 20, 1993 and is instead consistent with the disabling neck condition developing gradually over time as opposed to being due to a specific traumatic incident occurring at a judicially cognizable time.
 d. In her recorded statement plaintiff indicated that she had experienced neck problems for some time prior to May of 1993 for as much as a year, assumed they were due to arthritis and attempted to treat them herself with aspirin before ultimately seeking medical treatment from her family physician, Dr. Rawl, when her condition worsened, which again is inconsistent with her injuring her neck slamming a washing machine door closed on May 20, 1993 and instead is consistent with her neck problems developing gradually over time without identifiable incident or injury occurring at a judicially cognizable time.
 e. In the same recorded statement she did not contribute her injury to slamming the washing machine door on May 20, 1993 or any other incident or injury occurring at a judicially cognizable time; but rather, to the pushing and pulling of clothes as well as the closing of the washing machine door that she had done over the preceding 12 1/2 years, which is again inconsistent with injuring her neck slamming a washing machine door on May 20, 1993 or otherwise injuring her neck as a result of a specific traumatic incident occurring at a judicially cognizable time.
 f. Although the door of one of the two commercial washing machines was harder to close after replacement of a leaky seal; the seal had been replaced quite a while, for as much as a year prior to the alleged May 20, 1993 injury, resulting in its closing becoming a part of plaintiff's normal work routine associated with the 30 loads of laundry she had to wash daily regularly requiring her to slam this particular washers door shut.
 g. As part of her regular work routine during her more than a dozen years in the laundry prior to developing the disabling neck condition giving rise hereto plaintiff was regularly required to engage in pulling, straining and lifting heavy objects in the course of washing, drying and folding laundry.
5. Even assuming arguendo in the process of performing her regular job in the laundry at defendant-employer's nursing home plaintiff sustained a disabling neck injury requiring corrective surgery; the same injury was not the result of an interruption of her normal work routine, which as a laundry room worker required pulling, lifting and heavy straining in the course of loading, unloading and folding laundry as well as closing the washing machine door with her dominant right arm or the introduction of some new circumstance not a part of that routine; in that, plaintiff adopted her customary manner and method of performing her work in the laundry, including as part thereof, being required to slam the door of one of the premises two washing machines for as much as a year after a leaky seal was replaced and it became more difficult to close.
* * * * * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On May 20, 1993 plaintiff did not, either as a result of a specific traumatic incident or an interruption of her normal work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences sustain a disabling neck injury arising out of and in the course of her employment requiring neck surgery. G.S. § 97-2(6).
2. Even assuming arguendo that the involved neck injury arose out of and in the course of plaintiff's employment, it was neither the result of a specific traumatic incident occurring at a judicially cognizable time nor a compensable accident as contemplated by the terms of the North Carolina Workers' Compensation Act. In order to have a compensable accident in cases involving back injuries not occurring as a result of a specific traumatic incident there must be an interruption of the normal work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Garmon v. TridairIndustries, 14 N.C. App. 574, 188 S.E.2d 523 (1972). "Injury" and "accident" do not mean the same thing and an injury does not occur by accident if the employee at the time, as she was in the instant case, was merely carrying out her usual and customary duties in the usual way. Russell v. Yarns, 18 N.C. App. 249 S.E.2d 571 (1973); G.S. § 97-2(6).
3. Plaintiff's testimony, and other evidence, which if believed would tend to establish that she sustained a compensable neck injury on May 20, 1993, either as a result of a specific traumatic incident or conventional accident, is not accepted as credible.
"The Commission is the sole judge of credibility of the witness and the weight to be given their testimony; it may accept or reject all of the testimony of a witness; it may accept a part and reject a part. Robbins v. Nicholson, 10 N.C. App. 421,179 S.E.2d 183 (1971); Morgan v. Furniture, Inc., 2 N.C. App. 126,162 S.E.2d 619 (1968); Anderson v. Motor Company, 233 N.C. 372,64 S.E.2d 265 (1951). The Commission has the duty and authority to resolve conflicts in the testimony of a witness or witnesses. If the findings made by the Commission are supported by competent evidence they must be accepted as final truth. Rooks v. CementCompany, 9 N.C. App. 57, 170 S.E.2d 324 (1970); Petty v.Associated Transport, 4 N.C. App. 361, 167 S.E.2d 38
(1969).
* * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim must be and is hereby DENIED.
2. Each side shall bear its own costs and as part of their cost defendants shall pay the $350.00 expert witness fee previously awarded to Dr. Leonard for his deposition testimony to the extent the same has not already been paid.
 S/ _________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
S/ _________________ COY M. VANCE COMMISSIONER